## Negle v. Boon Terrace, Inc.

*David H. Weiner* and *Samuel L. Rodgers*, for plaintiff.

*Zeman & Zeman*, for defendant.

GIBSON, P. J., March 20, 1950.—Plaintiff filed his bill claiming that defendant threatened the violation of a certain lease agreement with plaintiff and prays for an injunction to restrain the entry of defendant on the premises leased by plaintiff and to restrain defendant from "violating the laws of the United States and of Pennsylvania and particularly the Rent Control Act of Congress", and defendant be enjoined from increasing the rents provided for in the lease agreement.

Defendant filed an answer denying its intention to violate any laws or rent regulations or any intention unlawfully to enter upon the premises.

A hearing was held and testimony taken. From the pleadings and testimony we make the following

*Findings of Fact*

1. On and prior to November 1, 1948, defendant owned and operated a housing project known as Boon Terrace, Inc., consisting of 320 units of housing accommodations located in North Strabane Township, Washington County, Pennsylvania.

2. On November 1, 1948, Boon Terrace, Inc., entered into a written lease with Walter Negle, plaintiff, leasing to him from November 1, 1948, and ending on November 30, 1948, unit no. 596 in Boon Terrace, consisting of four rooms, the total rent for which was $33.00.

3. The lease agreement also provided that if the tenant lawfully occupied the premises after the end of this term, this lease and all its terms and conditions "shall be in force for another month, and so on from month to month as long as the relation of landlord and Tenant continues".

4. The lease also provided "the Lessor or Agent may enter at will, to inspect the premises, to take or send persons on said property, seeking to rent or purchase, make repairs or improvements and post notices of 'To Let' and 'For Sale'."

5. Defendant registered this rental accommodation 596 with the Pittsburgh Area Rent Office.

6. Under the lease and the registration, defendant was to furnish fuel for the heating of water and cooking.

7. The housing accommodation was furnished with natural gas through a general meter supplying the various units for the heating of water and for cooking. A coal heating stove for heat was furnished. For this defendant did not agree to provide fuel.

8. About September 18, 1949, through a publication designated "News Boon Terrace", there was circulated to the tenants, including plaintiff, a mimeographed statement that the landlord intended to replace the old

coal heaters which had been furnished by installing a natural gas heater known as "Lowboy Automatic Circulator", for the purpose of eliminating coal boxes and the old stoves for which replacement parts could not be secured and as an improvement in the heating facilities, with the information that rents are to be "adjusted three dollars per month" less $1 deduction allowance for "cooking gas."

9. The Pittsburgh Area Rent Office was informed of the so-called improvement and change in service on or about September 13, 1949. No definite order was made. The amount of adjustment of rent was to be determined upon completion of the installation of a meter for each dwelling unit and on proper petitions and proceedings as required by the Pittsburgh Area Rent Office.

10. Defendant made arrangements with the gas company, and perhaps others, for the supplying of gas to the various housing units, including that of plaintiff, the installation of a meter for each housing unit, and for connecting to the hot water, cooking and heating facilities.

11. Plaintiff refused to permit such changes to be made and denied the right of defendant and its employes to enter upon the property composing his housing unit.

### Discussion

This case is unique in that from a reading of the bill of complaint without reference to the conclusions of law averred, no one can ascertain what acts of defendant are in violation of the terms of the lease or in violation of the laws of the United States or of the laws of Pennsylvania. It is only by an examination of the answer and searching through the testimony and the exhibits that the facts can be found, and after ascertaining them we are at a loss to understand what jurisdiction this court exercises to restrain defendant

from improving its property or the Federal authorities from regulating the services and rents.

Plaintiff appears to base this on the ground that he has suffered and will continue to suffer irreparable harm and damage unless defendant be enjoined. We can discover no evidence of any irreparable harm and damage, either threatened or suffered by plaintiff. Defendant had the right by its workmen to enter upon the premises for the purpose of making improvements, and in doing so for reasonable purposes there was no trespass or violation of any law or agreement so far as this record informs us.

Defendant was the owner of this property and had agreed to furnish certain facilities. We do not understand the law to be that where housing facilities are leased by a tenant the housing and equipment to be furnished can be frozen at the will of the tenant for as long as he chooses regardless of the fact that the term provided for in his lease has long since expired.

Under the Rent Control Act, as amended March 30, 1949, the Housing Expediter has the authority, by a regulation or order, to make such adjustments in connection with rent with respect to any housing accomodation. This also deals with the maintenance of services furnished. The Housing Expediter also has authority to regulate and prohibit speculative or manipulative practices in connection with any control of housing accomodations which in his judgment are equivalent to or likely to result in rent increases inconsistent with the purposes of the act.

It is also provided in this act that whenever, in the judgment of the Housing Expediter, any person has engaged, or is about to engage, in any acts or practices which constitute or will constitute a violation of any provision of this act or any regulation or order issued thereunder, the United States may make application to any judicial, State or Territorial court of competent

jurisdiction for an order enjoining such act or practices or for an order enforcing compliance with the provisions of the act, and for an injunction.

We find no other provision authorizing the application for, or the issuing of, an injunction or a restraining order.

It appears to us that there is no authority in this court and there is no occasion for this court to issue an injunction under the circumstances as shown in this proceeding. The proper authority to regulate and control, as designated by the Act of Congress, is the Housing Expediter represented by his area rent control office, and, until he has acted upon the questions of permissible improvements and service and the adjustment of rents, there has been no violation by defendant of either the contract or the rent control regulation.

### Conclusions of Law

1. It has not been shown that defendant has violated or threatened to violate any law of the State of Pennsylvania or of the United States.

2. It has not been shown that defendant has violated or threatened to violate a contract with plaintiff.

3. That the matters involved in this proceeding are entirely under the jurisdiction and control of the Housing Expediter through the Area Rent Office.

4. That a decree should be made dismissing plaintiff's bill and dissolving the injunction heretofore granted, at the cost of plaintiff.

### Order

And now, March 20, 1950, it is ordered that the foregoing adjudication be filed and notice of its filing be given by the prothonotary to counsel appearing of record for the respective parties, and if no exceptions be filed within 10 days after such notice, a decree will be entered in accordance with the foregoing adjudication.